That leaves us 0830482 United States v. Cain. Each side has ten minutes. Good morning. Good morning, Your Honors. Steve Hormel for Mr. Cain. There were three issues raised in this appeal. The first issue was whether or not Mr. Todd was, quote, driving the vehicle when he and Mr. Cain were trying to get it unlodged from the snow bank after the car had ran off the road. And the second issue is the Arizona v. Gantt search incident to arrest issue. And the last issue is whether or not assault under Washington statute 9836021A is a crime of violence. As far as the first issue is concerned, one thing I want to point out, at least factually, is the cases that were cited by both Mr. Ahmed and myself in relation to driving are very unclear. They sort of don't really define necessarily what driving is. But the case that I think hits the issue the best is a case actually cited by Mr. Ahmed, and that would be People v. Jordan at 75 Cal App, 3rd Supp, page 1. And in that case, they did find that the defendant was driving. However, they cited to another case, and that would be People v. Kelly, and that would be at 27 Cal App, 2nd Supp at 771. And in that case, the court noted in the Jordan case, it noted that Kelly, the only evidence was the defendant, while intoxicated, entered a car involved in a collision, started the engine, and with the help of others who were pushing the car, disengaged it, backed it out 4 to 5 feet, the wheel was demolished, and the axle dragged. So in reviewing the record in this case, I looked to see if there was any evidence that supported the fact that was it Mr. Cain making the car move, or was it the actual tires of the car moving. And I don't think it's clear in the record. In fact, a common experience in having tried to dislodge, there's nothing in the record that indicates that it was Mr. Cain's pushing motion that was causing the car to move or Mr. Todd's spinning of the tires. So I would say that based on those facts, I think that there was a lack of probable cause to arrest Mr. Todd for driving a motor vehicle. Can I ask, I'm sorry, go ahead. Can I ask you a question aimed actually at an issue you didn't raise, which is the argument the government makes about the plain view exception. In reading through the facts, I saw that the officer asked Cain to step out of the car, and Mr. Cain does that, and asked him to walk over to the patrol car, and he does that. And then the district court said Stockman observed the firearm while he was at least five feet outside the vehicle where he was entitled to be. And do you disagree with that? Was that a clearly erroneous fact finding? You know, it wasn't because the – Did you say it was or was it? I don't think that was a clearly erroneous fact finding because of the evidentiary hearing. And the judge actually asked the police officer, I believe, in the record, how far away were you standing from the car when you first observed the firearm? And I believe the answer was five or six feet. So I guess my confusion is, so he's standing where anyone could stand. Mr. Cain apparently just complied with his request, and he sees the end of a gun in the – I guess coming out of the pocket. And knowing that Mr. Cain is a felon, then it seemed like it was evidence of a crime. So I was saying, well, why doesn't the plain view exception just apply here? Maybe you could help me with that. You know, I thought I did answer it. I didn't answer it very clearly in my brief. The reason I believe that the plain error doesn't apply is for two reasons. Number one is Officer Stockman or Deputy Stockman went to the car and said, I'm searching this incident to arrest. That's a show of authority. So what Mr. Cain did was comply with that authority. It's not a consensual encounter at that point when he says, I'm searching the car incident to arrest as a police officer. So he had no right to have him step out of the car. Exactly. Because he wasn't – Mr. Cain was not suspected of a crime at that point in time. So it was a – are you saying when he asked Mr. Cain to step out of the car, that was an arrest and it was in violation of Mr. Cain's Fourth Amendment rights or what? I believe it was an unlawful detention not supported by reasonable suspicion because Mr. Cain was not suspected of any criminal activity. And the deputy, by saying, I'm searching the car incident to arrest, is showing authority of his position in order to do that. And so is your thought that because that asking Mr. Cain to step out of the car under a show of authority was unlawful when the officer was standing outside of the car, seeing things inside the car would be also unlawful? A direct result of his unlawful activity of making Mr. Cain move and making Mr. Cain stay at the other deputy's car in order for him to do the search incident to arrest. The other reason that I believe it's – not only was the search unlawful, in other words, he was at the place only as a direct result of his violation of Mr. Cain's Fourth Amendment right, but the Balkan case that's cited in the brief at 156 Fed Third, excuse me, 963, not only do you have to be in a place legally to see the object, but you also have to have the legal right to access the object. So it's not just viewing the object. He had to go into the car to access the object. So he violated – now because of Arizona v. Gantt, he violated the access rule. Knowing that Mr. – I'm sorry. Go ahead, Judge. Knowing that Mr. Cain was a felon because they had run that information, why wasn't the gun when he saw it in the car – why didn't he have probable cause to believe that was evidence of a crime, a felon in possession? Once he viewed it, at that point in time, you know, he may have. But the linchpin of your argument, if I understand it right, is that the plain view doctrine doesn't work here because he had no right to ask your guy to get out of the car. Correct. Now, if he had the right to ask your guy to get out of the car, assuming for the sake of discussion he had the right to do that, then the rest you lose because it's in plain view at that point. Am I right? You raise a good argument. I didn't think of that angle. Yeah, so if – What you're indicating is once – if he had the right to remove Mr. Cain from the car – Then the door's open and it's up to him or God and everybody to see. Then he knows that all three of them are felons, including Mr. Cain who said that he was driving the vehicle, I would have to say that he would have probable cause at that point. Okay, so then – So the issue then – then the issue boils down to does he have the right to go back to the car under Arizona v. Gant and say I'm doing a search incident to arrest? And we know under Gant he can't do that. Correct. Now, there might be some exceptions. Was the officer within his rights to say, look, I've just arrested two of this guy's buddies, I'm afraid, and I put the wrong legal label on it, but I don't want him to try to break out his pals from – Can he do a protective sweep? I know that Mr. Ahmed cited the Michigan v. Long case saying that they could do a protective sweep under those circumstances. Again, Mr. Cain, in order to do a protective sweep under those circumstances, he has to be a suspect of a crime under Michigan v. Long, not just a person who happens to be at the scene. So there still has to be some factual basis to support the officer believing not only was he armed and dangerous, but also that he was a suspect in some criminal activity under Michigan v. Long. So, no, I don't – yeah, so I don't believe that they had that exception, nor do I believe there was any exception as far as evidentiary value that may be sought. The same reasons under Arizona v. Gant where they said drive-in while suspended, you're not going to expect evidence of drive-in while licensed suspended in a car. I believe the officers at that point in time knew that Mr. Todd wasn't the person who drove the car into the car bank and knew that it was Mr. Cain that had borrowed the car from his girlfriend. Judge Nelson had a question. I had the same question you had. Okay. You have about a minute and a half left. Did you want to save it? Only for the assault issue. I just wanted to address that real quickly. And then I think the case that serves on that issue is the United States v. Ortega-Mendez, 450 Fed 3rd, 1010, where the Ninth Circuit found simple battery in California that could be completed by basically a touching, didn't constitute a crime of violence. And I believe that same rationale applies for this Washington statute. What do we do about Carson, though, which seems to reaffirm Hermoso-Garcia? So Fernandez-Ruiz didn't specifically overrule Hermoso-Garcia, and then we've got Carson, which seems to reaffirm that this particular statute is a crime of violence. Yes, I think that's answered, Your Honor. We're in Navarro-Lopez, and that would be at 503 Fed 3rd at page 1072 where the Ninth Circuit panel cites to the case cites to the Gonzales v. Duenas-Alvarez case out of the United States Supreme Court. And at 1072, the Ninth Circuit said specifically the court stated that to find a state statute falls outside of a generic definition, there must be a realistic probability, not a theoretical possibility, that the state would apply its statute to conduct that falls outside the generic definition. Well, here we know that Washington State does do that. We know that Washington State applies its statute to conduct that falls outside of the generic definition because of State v. Esters that's cited in my brief. Well, if I may, I'd like to add on that issue. What do you make of the case of James v. United States, holding that we should use the, quote, ordinary case under the statute and not the minimum case when applying a categorical approach to determine whether a crime is a crime of violence? That's a good question because what is the ordinary case in the State of Washington when the State of Washington allows all sorts of behavior to constitute an assault? And you'd have to research, I guess, all the fourth degree assault cases because an intentional assault under second degree is the same as an intentional assault under the fourth degree gross misdemeanor statute. The only difference between the second degree and the fourth degree is that there's a reckless infliction of substantial bodily harm in the second degree statute. There's a result that makes it a felony as opposed to the action. So when you look at the cases in Washington where spitting is actually prosecutorable, that's a word, can be prosecuted, then what is the ordinary case in the State of Washington? What we do know is that Washington does prosecute and permit prosecution for offensive touchings as an assault. So I think, James, it does give you a formula, but the State of Washington doesn't give you the answer to that formula because they prosecute all kinds of behavior. Thank you. Thank you, Mr. Hormel. Good morning. Good morning, Your Honors. My name is Ani Ahmed. I represent the United States in this case. Your Honor, the first issue I want to address is the plain view doctrine that the district court correctly ruled on. The district court, in answering Your Honor's earlier question, correctly stated that it was irrelevant whether Mr. Cain or the officer was justified in removing Mr. Cain from the vehicle. It just happened by sequence of facts that the officer did not see the weapon until Mr. Cain was removed from the vehicle. But the United States would submit that the officer was legitimate in his right, excuse me, that he could remove Mr. Cain from the vehicle because he had arrested, under applicable law at the time, he had arrested Mr. Todd and was going to search the vehicle instant the arrest of Mr. Todd. You know, we have cases that say if Gant was the rule, we can't look back and say that he relied in good faith on what had been the law. Your Honor, I also know that the United States intends to submit that for en banc review. I know that was recently ruled on in good faith. In the meantime, this is what we're stuck with. I understand, but, Your Honor, I was... What's our next point? Well, there was no search. As the district court correctly found, the officer was five to six feet away from the vehicle when he spotted the firearm. Legal right, what pigeon hole do we put? What right did the officer have to tell Cain to get out of the car? If he can't do it because he's going to search incident to arrest, what other basis would he have to tell him to get out of the car? Well, Your Honor, under the Michigan v. Long case, he was concerned that Mr. Cain did have access to a firearm or could have had access. Did he testify to that? Yes, Your Honor, he did. Well, it's in his report, which is stipulated to as factual. The report indicates it very specifically that when Mr. Cain returned to the vehicle, he was concerned about that Mr. Cain could have access to firearms, and he articulated that in his report. So as far as the protect the sweep aspect of it, he was legitimately there. I would submit, Your Honor, this is not some sort of manipulation or some charade by the officer. I don't mean this as any disrespected officer, but this is a beat cop at 3.30 in the morning, and Gant hasn't even been decided yet. So he's not manipulating the facts to conjure up something which would fall in line with Gant. It hasn't even been decided yet. It's the last thing on his mind at 3.30 in the morning. So when he writes this report, he specifically states, when Mr. Cain goes back to the vehicle, he's concerned about Mr. Cain's access to firearms. Now, Mr. Cain, in the true sense of the word, wasn't seized or searched. I mean, when he got out of the vehicle, when the officer asked Mr. Cain to get out of the vehicle, he actually asked Mr. Cain, do you mind if I pat you down? And Mr. Cain said, no, I don't mind, and he patted Mr. Cain down. He didn't find any contravantage notes in his report. Your Honor, the report by the officer is in the excerpt of records submitted by defense counsel in this case. Let me go ahead. All right. For post-Gant, where does Deputy Stockman get the authority post-Gant to return to the car and look for guns or drugs or whatever might be there? Your Honor, the United States submits it was based on a protective sweep of that vehicle, which is talked about in Gant. Gant specifically states that. Everyone was, by an officer or in a patrol car, protected sweep when no one is in the car. I mean, how is that justified? Well, Mr. Cain was in the car at the time. He was taken out of the car. And that caused the door to be opened, and that then caused him to see the part of the gun. But assuming that he had no authority, as Simpleman said, to order him to get out of the car. Your Honor, he didn't open the door, and his action by going to the car. The door had to be opened in order for Mr. Cain to get out of the car. Is that right? The door had already been, it was open when he approached the vehicle. Mr. Cain was sitting in the driver's seat with the door open as the officer approached the vehicle. And so he did not cause Mr. Cain, by his request, to open the door. The door had already been opened. But he told him to get out of the car? He told him to get out of the car. That's when the gun came into view? Correct, Your Honor. Okay. Now, I'm looking at a document called stipulated facts. I don't see where the officer says, I did this as a protective sweep. Your Honor, he doesn't use those words. But he does say in his report, which was stipulated to, it starts on page, actually starts on page two of the excerpt of record. And I can tell the court specifically. And this came into evidence in the motion to suppress? Yes, it did, Your Honor. And the judge specifically refers to it, and it's specifically stipulated to it by the parties as a stipulation of facts. And the judge talks about, the district court judge talks about, well, he wants some additional facts as to the door opening and where he saw the weapon. And the district court, I think, says to the point of, hey, no one discussed this before, but what about the plain view doctrine? The United States would submit, actually, in its briefing, which was on the record, that the United States, in its response to the defendant's motion to suppress, actually did cite or did note the plain view doctrine. And the district court says, well, you know, I think this is applicable because the door was open, he's six feet away. And, again, pre-Gant, Your Honor, I mean, he was legitimately there. But the United States would argue also post-Grant that he was legitimately there because he was concerned about Mr. Cain's access to firearms. He knew at the time, and he had facts, that he was a convicted felon, that he had suspicion that he was a member of a gang, that he had violent felony convictions in the past, and he notes this in his report. I've got the report in front of me. Can you show me the part where he says I did a protective sweep? Your Honor, he does not use the words protective sweep. But the only thing he says is I searched incident to arrest, right? I see before his fellow deputy, Seth Farrow, appeared on the scene. He said that he told Cain and Todd to stay put because he was concerned about finding guns, knives, clubs in the car. But then it looks like he then allowed them to return to the car after Hollingsworth was arrested. Are you referring to those preliminary statements? Yes, Your Honor. But I'm also referring to in the executive record, page 9 and page 10. On page 10 in the first paragraph, he notes that he handcuffs Cain and he says, well, I don't want him to return to the vehicle. Where were you reading? Into the first paragraph, Your Honor, on page 10 of the executive record. Even though I had patted him and felt no weapons, I did not want him to be able to charge over to the vehicle. That was already after he had him get out of the car. That is correct, Your Honor. Okay, but going back, he says, after he put Todd back in the rear of my patrol vehicle, you see the middle of page 9? Yes, Your Honor. He has Todd back in the patrol vehicle. Then the next sentence is, by that time, Cain was back sitting in the driver's seat. I told Cain that I was going to search the vehicle incident to arrest. And then it goes on from there. I mean, it doesn't say anything. I was searching as a protective measure. He said he was searching incident to arrest. Right, but beforehand, Your Honor, as Your Honor just pointed out just a moment ago, beforehand he was concerned about access to weapons, and that's why he makes this conclusion. And he already patted him down and cleared him, right? Well, he patted him down, but he didn't know what was in the vehicle at the time. I mean, he had no more business with Cain. He had cleared him and put him in the car. The only reason he went back to the car is because he arrested the other guy and was going to do a search incident to the arrest, which we know under Gant you can't do. Correct, but that's based on a subjective intent, Your Honor, and the United States would submit that that's irrelevant. Under applicable law, I mean, he had a reason to go back and do a protective sweep at that point. He was concerned about weapons in the car. Now, factually, yes, he did go back to search incident to arrest, but looking at it objectively, did he have a reasonable basis to conduct a protective sweep? And the United States would submit that you don't have to be a suspect. That's not what – I mean, it just happened that in that case, in the Michigan v. Long case, the individual was a suspect. I think that factually the person was driving erratically and they saw a knife on the floorboard of the vehicle. He was a suspect in that vehicle, but there's no requirement. In fact, it says the arrestee or some other person, and if he has a reasonable suspicion that there may be a weapon in the car, and he does, and he articulates that in his report. He says, based on all these factors, including their criminal history, their tattoos, 3.30 in the morning, I'm in an industrial area. It's not well lit. This is the classic case that they talked about again, where there's not six officers on the scene outnumbering these three individuals. It's him. And until Officer Burroughs shows up to take Mr. Todd into custody, or Mr. Hollingsworth, excuse me, into custody, he's there alone. So this is a classic case where an officer does believe that his safety may be at issue, and he articulates that. Your Honor, I would, unless the Court has any further questions, I would like to hit the crime of violence aspect of it, too. Your Honor, as the cases that the United States cites, this is categorically a crime of violence, that being second-degree assault. Here we have an intentional act. It may recklessly inflict bodily injury, but the act itself is purposeful. It's aggressive. It's violent in nature. And this Court has previously correctly found that that crime, that conviction for assault to second degree, whether it's under Section A or under Section F, is categorically a crime of violence. If someone spits at another person, can they be convicted under this code section? Well, Your Honor, it's unlawful touching. It does include unlawful touching, but again, and I think this is a case that the Court previously referred to, it's in the ordinary sense. In the ordinary sense, not in the extraordinary sense. In the extraordinary sense, can someone be convicted of second-degree assault if they unlawfully touch someone? Yes. But this is not. Doesn't it have to recklessly cause substantial bodily harm? Yeah, it would be an extraordinary. I mean, it would be an odd scenario where a touch would recklessly cause substantial bodily harm. I guess it's conceivable, but. It would be extraordinary, Your Honor. What if I go over and kiss Judge Okuda, and then she's so overwhelmed by it, she falls over and hits her head? It would be, as the Court, you know, the Court thought of that and said anybody can make any sort of argument as to what it could encompass, but in the ordinary sense of the word, in the ordinary sense of this violation of statute, it's purposeful, it's aggressive, and it's not like the Arizona case where there was actually in the statute it was ambiguous because it encompassed reckless conduct. It was specifically you could be convicted of the offense if you just merely engaged in reckless conduct. In this case, it's intentional. That's what the statute says, and therefore it is violent. And even if you did it on a modified categorical approach or modified approach, again, and that's what the district court did by considering the police documents, which it could under Shepard, it found that in fact it was a crime of violence even then. Thank you very much, Mr. Hormel. Mr. Hormel, you used up your time. If you'll take a minute and you can keep it to a minute, we'll give you a minute and rebuttal if you would. Just one matter, and that's Michigan v. Long. 463 U.S. 1032 says, quote, Our past cases indicate that the protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger. So the person who is subject to the protective sweep has to be a suspect. So that's the only point I wanted to make. Thank you, gentlemen. The case just argued is submitted and will stand at recess for the morning. All rise. The session stands adjourned.
judges: Nelson D. W., Silverman, Ikuta